1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    UNITED STATES OF AMERICA,              No.  1:16-cr-00072-NONE

12                 Plaintiff,                ORDER DENYING MOTION AND
                                             SUPPLEMENTAL MOTION FOR
13         v.                                COMPASSIONATE RELEASE

14    RANDALL LEE ROGERS, et al.,            (Doc. Nos. 79, 84)

15                 Defendant.

16

17         Pending before the court is defendant Randall Lee Rogers's motion and supplemental

18    motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).  Both are largely based

19    on defendant's medical condition and the risks posed to him by the ongoing coronavirus

20    ("COVID-19") outbreak.  (Doc. Nos. 79 at 1; 84 at 3–6.)  For the reasons explained below,

21    defendant's motion and supplemental motion will be denied.

22                                    **BACKGROUND**

23         On December 11, 2017, defendant pleaded guilty to one count of possession of an

24    unregistered firearm in violation of 18 U.S.C. § 5861(d) and one count of transfer of an

25    unregistered firearm in violation of 18 U.S.C. § 5861(e).  (Doc. No. 50 at 2.)[1]  It was determined

26    _____

27    [1]  According to the presentence report prepared in his case, during an undercover investigation,
      defendant Rogers sold various firearms and ammunition to confidential informants, including at
      least five AR-15s, 10 short-barreled AR-15-type rifles, pistols, and at least one 100-round-drum
28    magazine clip.  (Doc. No. 64 (Presentence Report) at 5–9.)

                                            1

1    that under the U.S. Sentencing Guidelines, defendant Rogers' adjusted offense level was 25 and

2    his criminal history category was I, resulting in an advisory sentencing guideline range calling for

3    a sentence of between 57 and 71 months imprisonment.  (Doc. No. 64 (Presentence Report) at

4    24.)  The U.S. Probation Office recommended an upward variance from the guideline range based

5    upon consideration of the sentencing factors under 18 U.S.C. § 3553(a) to a sentence of 90

6    months imprisonment.  (*Id.* at 23–25.)  On June 4, 2018, the court sentenced defendant to an

7    above guideline term of imprisonment of 80 months on each count of conviction with those terms

8    to be served concurrently followed by two 36-month terms of supervised release to be served

9    concurrently as well.  (Doc. No. 73 at 3.)

10         Defendant Rogers is currently serving his sentence at the U.S. Bureau of Prisons' ("BOP")

11   Mendota Federal Correctional Institute in Mendota, California ("FCI Mendota").  (Doc. No. 79 at

12   1.)  On May 21, 2020, defendant appearing *pro se* filed the pending motion for compassionate

13   release pursuant to 18 U.S.C. § 3582(c)(1)(A).  (*Id.*)  On July 6, 2020, defendant, by and through

14   his appointed counsel, filed a supplement to his motion for compassionate release, attaching his

15   BOP medical records and other documents in support of his motion.  (Doc. No. 84.)  On July 20,

16   2020, the government filed its opposition to the motion, and on July 31, 2020, defendant filed his

17   reply thereto.  (Doc. Nos. 85, 86.).

18                                   **LEGAL STANDARD**

19         A court generally "may not modify a term of imprisonment once it has been imposed."  18

20   U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of

21   conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not

22   be modified by a district court except in limited circumstances.").  Those limited circumstances

23   include compassionate release in extraordinary cases.  *See United States v. Holden*, __ F. Supp.

24   3d __, 2020 WL 1673440, at *2 (D. Or. April 6, 2020).  Prior to the enactment of the First Step

25   Act of 2018 ("the FSA"), motions for compassionate release could only be filed by the BOP.  18

26   U.S.C. § 3582(c)(1)(A) (2002).  Under the FSA, however, imprisoned defendants may now bring

27   their own motions for compassionate release in the district court.  18 U.S.C. § 3582(c)(1)(A)

28   (2018).  In this regard, the FSA specifically provides that a court may

upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf[2] or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that –

    (i)        extraordinary and compelling reasons warrant such a reduction; or

    (ii)       the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission [.]

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[3]

_____

[2]  If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). If the Regional Director denies a defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.* When the final administrative appeal is resolved, a defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

[3]  Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L. 116-136, expands the BOP's authority to release incarcerated defendants without judicial intervention. The CARES Act allows the BOP to "lengthen the maximum amount of time" for which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director determines appropriate," assuming "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP. CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2) (2020). However, the BOP's authority in this regard is limited to "the covered emergency period." *Id.* The BOP's authority expires "30 days after the date on which the national emergency declaration terminates." *Id.* § 12003(a)(2). After the CARES Act was enacted, the Attorney General issued a memo instructing the BOP to "immediately review all inmates who have COVID-19 risk factors" beginning with those who are housed at facilities where "COVID-19 is materially affecting operations." Office of Att'y Gen., *Increasing Use of*

The applicable policy statement with respect to compassionate release in the U.S. Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and compelling reasons."  U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13[4]; *see also United States v. Gonzalez*, No. 2:18-cr-00232-TOR, 2020 WL 1536155, at *2 (E.D. Wash. Mar. 31, 2020) (noting that courts "universally" rely on U.S.S.G. § 1B1.13 to define "extraordinary and compelling reasons," even though that policy statement was issued before Congress passed the FSA and authorized defendants to file compassionate release motions).  However, a large and growing number of district courts across the country have concluded that because the Sentencing Commission has not amended the Guidelines since the enactment of the FSA, courts are not limited by the pre-FSA categories described in U.S.S.G. § 1B1.13 in assessing whether extraordinary and compelling circumstances are presented justifying a reduction of sentence under 18 U.S.C. § 3582(c).  *See, e.g.*, *United States v. Parker*, __ F. Supp.3d __, 2020 WL 2572525, at *8–9 (C.D. Cal. May 21, 2020) (collecting cases); *United States v. Rodriguez*, 424 F. Supp. 3d 674, 681 (N.D. Cal. 2019).

In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the defendant bore the initial burden of demonstrating that a sentence reduction was warranted.  *See United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998).  Although the Ninth Circuit has not specifically addressed the question of which party bears the burden in the context of a motion for compassionate brought pursuant to § 3582(c) as amended by the FSA, district courts

---

*Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020).  The BOP has acted on the Attorney General's guidance, including one case in which a sentenced prisoner was released to home confinement after serving less than half his sentence from a facility that reported no positive COVID-19 cases at the time of his release.  *See* Hannah Albarazi, *Paul Manafort Seeks Prison Release Over COVID-19 Fears*, LAW360 (Apr. 14, 2020), https://www.law360.com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid COVID-19 Fears*, LAW360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-manafort-released-from-prison-amid-covid-19-fears.

[4]  The Sentencing Guidelines also require that to be granted a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."  U.S.S.G. § 1B1.13(2).

1    that have done so have agreed that the burden remains with the defendant.  *See, e.g.*, *United*

2    *States v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020);

3    *United States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, at *3 (W.D. Wash. May 7,

4    2020).

5                                               **ANALYSIS**

6              As district courts have summarized, in analyzing whether a defendant is entitled to

7    compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the court must determine whether a

8    defendant has satisfied three requirements:

9                    First, as a threshold matter, the statute requires defendants to exhaust
                     administrative remedies.  18 U.S.C. § 3582(c)(1)(A).  Second, a
10                   district court may grant compassionate release only if "extraordinary
                     and compelling reasons warrant such a reduction" and "that such
11                   reduction is consistent with applicable policy statements issued by
                     the Sentencing Commission.  *Id.*  Third, the district court must also
12                   consider "the factors set forth in Section 3553(a) to the extent that
                     they are applicable."  *Id.*
13

14   *Rodriguez*, 424 F. Supp. 3d at 680; *see also United States v. Ramirez-Suarez*, 16-CR-00124-

15   LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *Parker*, 2020 WL 2572525, at *4;

16   *United States v. Trent*, No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9,

17   2020) (noting that as to the third factor, under 18 U.S.C. § 3582(c)(1)(A) release must be

18   "consistent with" the sentencing factors set forth in §3553(a)).

19   **A.       Administrative Exhaustion**

20             Defendant submitted an administrative request seeking compassionate release from the

21   Warden at his institution of confinement on April 29, 2020.  (Doc. No. 84-3 at 1.)  The

22   administrative request sought release under the CARES Act and cited defendant's history of

23   suffering with Crohn's disease.  (*Id.*)  On May 6, 2020, the Warden denied defendant's request

24   and instructed him to supply "[t]he extraordinary or compelling circumstances that the inmate

25   believes warrant consideration."  (*Id.* at 2.)  However, the Warden did not mention defendant's

26   Crohn's disease in that response.  (*Id.*)  Thus, while the Warden provided *a* response to defendant,

27   it was devoid of reference to the sole medical issue defendant raised in his administrative request.

28   (*See id.* at 1–2.)  It is perhaps for this reason that the government concedes exhaustion has been

                                                     5

1   satisfied in the present case.  (*See* Doc. No. 85 at 4.)   Therefore, the court concludes that

2   defendant has exhausted his administrative remedies and will turn to the merits of the pending

3   motion.

4   **B.      Extraordinary and Compelling Reasons**

5          "Extraordinary and compelling reasons" warranting compassionate release may exist

6   based on a defendant's medical conditions, age and other related factors, family circumstances, or

7   "other reasons."  U.S.S.G. § 1B1.13, cmt. n.1 (A)–(D).  Even though the catch-all of "other

8   reasons" was included in the policy statement at a time when only BOP could bring a

9   compassionate release motion, courts have agreed that it may be relied upon by defendants

10  bringing their own motions under the FSA.  *See, e.g.*, *United States v. Kesoyan*, No. 2:15-cr-236-

11  JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases).

12         Thus, the medical condition of a defendant may warrant compassionate release where he

13  or she "is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life

14  trajectory)," though "[a] specific prognosis of life expectancy (i.e., a probability of death within a

15  specific time period) is not required."  U.S.S.G. § 1B1.13, cmt. n.1 (A)(i).  Non-exhaustive

16  examples of terminal illnesses that may warrant a compassionate release "include metastatic

17  solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced

18  dementia."  *Id.*  In addition to terminal illnesses, a defendant's debilitating physical or mental

19  condition may warrant compassionate release, including when:

20                  The defendant is

21                  (I)   suffering from a serious physical or medical condition,

22                  (II)  suffering from a serious functional or cognitive impairment, or

23                  (III) experiencing deteriorating physical or mental health because of
                    the aging process,

24
                    that substantially diminishes the ability of the defendant to provide
25                  self-care within the environment of a correctional facility and from
                    which he or she is not expected to recover.
26

27  *Id.* at cmt. n.1 (A)(ii).  Where a defendant has moderate medical issues that otherwise might not

28  be sufficient to warrant compassionate release under ordinary circumstances, some courts have

1  concluded that the risks posed by COVID-19 tips the scale in favor of release in particular

2  situations.  *See, e.g.*, *United States v. Rodriguez*, No. 2:03-cr-00271-AB, 2020 WL 1627331, at

3  *10–11 (E.D. Pa. Apr. 1, 2020) ("Without the COVID-19 pandemic—an undeniably

4  extraordinary event—Mr. Rodriguez's health problems, proximity to his release date, and

5  rehabilitation would not present extraordinary and compelling reasons to reduce his sentence.

6  But taken together, they warrant reducing his sentence.").

7       Compassionate release may also be warranted based on a defendant's age and other

8  related factors.  In these situations, "extraordinary and compelling reasons" exist where a

9  "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or

10  mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of

11  his or her term of imprisonment, whichever is less."  U.S.S.G. § 1B1.13, cmt. n.1(B).  In

12  determining a defendant's projected release date, courts may take into account any "good time

13  credits" awarded to the defendant by BOP for "exemplary" behavior in prison as set forth in 18

14  U.S.C. § 3624(b)(1).  *See, e.g.*, *United States v. Burrill*, No. 17-cr-00491-RS, 2020 WL 1846788,

15  at *1 n.1 (N.D. Cal. Apr. 10, 2020).

16       Here, defendant Rogers argues that extraordinary and compelling reasons warranting his

17  compassionate release exist due to his Crohn's disease.  Defendant is only 34 years old.  (*See*

18  Doc. No. 64 (Presentence Report) at 3.)  At the time of his sentencing in June of 2018, defendant

19  explained "he was diagnosed with Crohn's disease at age 10 and last took medication in 2000."

20  (*Id.* at 16.)  Defendant's BOP medical records corroborate his diagnosis of Crohn's disease and

21  suggest that he has experienced some "abdominal cramping" and pain while in prison.  (Doc. No.

22  84-2 at 2 ("Crohn's disease . . . Current").)  As recently as June 4, 2020, however, a physician

23  stated that defendant "generally . . . appears well and comfortable."  (*Id.*)  By defendant's own

24  account, when he experiences abdominal pain, which is presumably the result of his Crohn's

25  disease, he believes "antacid medication and [the] 'right diet' helps with the pain."  (*Id.* at 5)

26  (describing defendant's clinical encounter on May 9, 2020).  Defendant does not point to any

27  other medical condition that could serve as the basis for his compassionate release.

28  /////

1    Moreover, it does not appear that defendant's Crohn's disease places him at a recognized

2    higher risk for contracting a severe illness due to COVID-19, at least according to the U.S.

3    Centers for Disease Control and Prevention ("CDC").  *See Coronavirus Disease 2019 (COVID-

4    19): People Who Are at Increased Risk for Severe Illness*, CENTERS FOR DISEASE CONTROL AND

5    PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-

6    increased-risk.html (last visited Sept. 7, 2020).  The CDC apparently does not even recognize,

7    more generally, gastrointestinal issues as placing individuals at higher risk of severe illness from

8    COVID-19.  *See id.*  Accordingly, defendant has not demonstrated that he is at higher risk for

9    contracting a severe illness due to COVID-19.[5]

10   Defendant has fallen short in any attempt to demonstrate he is "suffering from a serious

11   physical . . . medical condition . . . from which he . . . is not expected to recover."  *See* U.S.S.G. §

12   1B1.13, cmt. n.1 (A)(ii).  (*See* Doc. No. 84 at 3.)  The court will assume defendant is unlikely to

13   recover from his Crohn's disease, given that he was diagnosed with that condition when he was

14   only 10 years old and still suffers from it.  However, defendant has not shown that his Crohn's

15   disease condition qualifies as "serious physical . . . medical condition" for purposes of

16   compassionate release.  Finally, nothing in the record before the court indicates that defendant is

17   significantly constrained in properly caring for himself due to his Crohn's disease while

18   incarcerated at FCI Mendota.  *See* U.S.S.G. § 1B1.13, cmt. n.1 (A)(ii).

19   Relatedly, with respect to COVID-19, FCI Mendota has reported that one inmate and

20   eight staff have contracted COVID-19 and recovered from the virus, with no deaths at that

21   prison.[6]  *See COVID-19*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last

22   visited Sept. 7, 2020).  At the moment, two inmates and one staff member currently are reported

23   /////

24

---

25   [5] While it is true that "what we know about COVID-19 is changing daily," (Doc. No. 84 at 5),
     the CDC regularly updates its guidelines, yet it has not identified Crohn's disease or
26   gastrointestinal issues generally as placing individuals at higher risk due to COVID-19.

27
     [6] FCI Mendota houses 690 inmates.  *FCI Mendota*, FEDERAL BUREAU OF PRISONS,
28   https://www.bop.gov/locations/institutions/men/ (last visited Sept. 7, 2020).

as actively having the virus.[7]  *Id.*  Defendant has submitted a declaration addressing how his

Crohn's disease presents unique issues for him while imprisoned, namely that the BOP serves

him an inappropriate diet for one suffering from Crohn's disease and that, presumably as a result,

his abdominal pain has been "constant."  (Doc. No. 84-4 ¶ 4.)  However, BOP medical records

report that defendant's pain is moderate and that at the time of his most recent medical visit in

June 2020, he "generally . . . appear[ed] well and comfortable."  (*See* Doc. No. 84-2 at 2.)  As this

court has previously noted, "[c]hronic conditions that can be managed in prison are not a

sufficient basis for compassionate release."  *United States v. Ayon-Nunez*, No. 1:16-cr-00130-

DAD, 2020 WL 704785, at *3 (E.D. Cal. Feb. 12, 2020).  While defendant's declaration also

cites his inability to socially distance at FCI Mendota, this circumstance does not "substantially

diminish[] [his] ability . . . to provide self-care" in FCI Mendota since defendant Rogers has

failed to establish that he is identifiably at a high risk of becoming severely ill if he contracts the

virus in light of his other medical condition.  (*See* Doc. No. 84-4 ¶ 3.)[8]  In short, defendant has

not carried his burden of demonstrating that he is entitled to the requested relief under 18 U.S.C.

§ 3582(c)(1)(A).  *See, e.g.*, *Greenhut*, 2020 WL 509385, at *1 ("The defendant bears the initial

burden to put forward evidence that establishes an entitlement to a sentence reduction.").

Therefore, in this case, the court does not find extraordinary and compelling reasons

justifying the granting of the pending motion for compassionate release.

**C.     Consistency With the § 3553(a) Factors**

Because the pending motion and supplemental motion fail to establish extraordinary and

compelling reasons justifying compassionate release in this case, the court need not address

whether any reduction in defendant's sentence would be consistent with consideration of the

---

[7]  The undersigned does not necessarily take these reported numbers at face value given the manner in which the CDC guidelines apparently allow for individuals to be counted as recovered from the virus without confirming test results. However, there is also no evidence before the court contradicting those reported numbers.

[8]  To the extent defendant complains solely about the conditions of his confinement at FCI Mendota, a motion for compassionate release is not the proper vehicle by which to raise a claim that those conditions violate his rights under the Eighth Amendment.

1    sentencing factors set forth at 18 U.S.C. § 3553(a).

2          Nonetheless, the court does note that based upon consideration of the § 3553(a) factors the

3    U.S. Probation Office recommended that defendant Rogers be sentenced to a 90–month term of

4    imprisonment.  (Doc. No. 64 (Presentence Report) at 23–25.)[9]  Specifically, the probation officer

5    noted with respect to defendant Rogers that: 1) despite the positive opportunities his family

6    situation had offered him, he had engaged in this extremely serious and dangerous criminal

7    conduct by selling 30 assault rifles, large capacity magazines, a sawed–off shotgun to those

8    seeking to purchase such dangerous weapons and ammunition unlawfully; 2) he had performed

9    poorly on pretrial release, engaging in new criminal conduct with which he was charged; 3) he

10   was more actively involved in the serious criminal conduct that formed the basis for this case than

11   his co-defendant; and 4) he had "demonstrated a pattern of resistive behavior and defiance

12   towards law enforcement officials."  (*Id*. at 25.)  Therefore, were the court to reach this issue, it

13   would conclude that a reduction of defendant's 80–month sentence effectively to a term of only

14   two years would not adequately reflect the seriousness of his offense of conviction, promote

15   respect for the law, provide just punishment, or afford adequate deterrence to criminal conduct.

16   *See United States v. Purry*, No. 2:14-cr-00332-JAD-VCF, 2020 WL 2773477, at *2 (D. Nev. May

17   28, 2020); *United States v Shayota*, Case No. 15-CR-00264-LHK-1, 2020 WL 2733993, at *5

18   (N.D. Cal. May 26, 2020).

19                               **CONCLUSION**

20         For the reasons explained above, defendant's motion and supplemental motion for

21   compassionate release (Doc. Nos. 79, 84) are denied.

22   IT IS SO ORDERED.

23     Dated:   __September 9, 2020__                    _____

24                                              UNITED STATES DISTRICT JUDGE

25

26

27   ─────────────────────

28   [9]  As noted above, the sentencing judge instead imposed an above guideline sentence of 80
     months imprisonment, ten months less than that recommended by probation.